IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDGARDO NAZARIO MONTIJO,

    Plaintiff,

    v.                                      CIVIL NO. 03-2276 (RLA)

HECTOR ROSARIO, et al.,

    Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants have moved the court to enter summary judgment on their behalf. The court having considered the arguments presented by the parties as well as the evidence submitted in support thereof hereby finds that defendants' request is warranted.

**PROCEDURAL BACKGROUND**

Plaintiff instituted this suit against the Puerto Rico Electric Energy Authority ("AEE") and various of its officers in their individual capacity[1] alleging that he was demoted from his position as District Line Superintendent and thereafter harassed and persecuted due to his political affiliation with the New Progressive Party ("NPP"). The complaint claims violations of the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

---

[1] These are: (1) Héctor Rosario (Executive Director); (2) Juan Arroyo Suárez (Administrator of the Operation, Control and Distribution System); (3) Valeriano Otero Chacón (Director of Transmission and Distribution of Electricity); and (4) Heriberto Alicea Matos (Interim Superintendent of the Dispatch Services of the Monacillos Area).

In support of their petition defendants claim, *inter alios,* that there is no due process violation or political discrimination in the alleged demotion or in any of the other practices charged by plaintiff.

### SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

CIVIL NO. 03-2276 (RLA)                                    **Page 3**

---

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" <u>Poulis-Minott v. Smith</u>, 388 F.3d 354, 361 (1st Cir. 2004) (citing <u>Barbour v. Dynamics Research Corp.</u>, 63 F.3d 32, 36 (1st Cir.1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). *See also*, <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); <u>Simas v. First Citizens' Fed. Credit Union</u>, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); <u>Perez-Trujillo v. Volvo Car Corp.</u>, 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); <u>Molina Quintero v. Caribe G.E. Power Breakers, Inc.</u>, 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to

**CIVIL NO. 03-2276 (RLA)**                                           **Page 4**

credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". <u>Cruz-Baez v. Negron-Irizarry</u>, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2000); <u>Grant's Dairy v. Comm'r of Maine Dep't of Agric.</u>, 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". <u>Lopez -Carrasquillo v. Rubianes</u>, 230 F.3d 409, 412 (1st Cir. 2000); <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

### THE FACTS

We find that based on the evidence submitted in this case the following facts are not in controversy.

1.   Plaintiff, Edgardo Nazario Montijo, commenced working for AEE on or about 1989 as a Meter Installer I.

2.   On March 23, 1997, plaintiff was assigned as a temporary substitution to the position of Line Supervisor I which designation ended on July 12, 1998.

CIVIL NO. 03-2276 (RLA)                                      **Page 5**

3.    Effective October 3, 1999, plaintiff's position as Line Supervisor I was reclassified to Line Supervisor II.

4.    Pursuant to a letter dated December 28, 1999 plaintiff, as an alleged Line Superintendent II, was to be in charge of the Operations Center in Bayamon's Technical Office.

5.    Plaintiff, whose official position was Line Supervisor II, was assigned to a temporary substitution as Line Supervisor III on March 5, 2000 which concluded on September 1, 2001. Plaintiff did not compete for the Line Supervisor III regular position at that time.

6.    On September 2, 2001 plaintiff was again designated as temporary substitute in the position of Line Supervisor III.

7.    On October 17, 2002, Juan Arroyo, Administrator of Operation and System Distribution, recommended plaintiff for the regular position of Line Supervisor III after plaintiff competed for the same.

8.    On October 26, 2002 plaintiff was officially adjudicated the position of Line Supervisor III, Position No. 575-05M6-221 with an annual salary of $45,162.00.

9.    On December 6, 2002, Juan Arroyo informed all supervisory personnel at the Bayamón and San Juan dispatches that "[e]ffective immediately Mr. Heriberto Alicea Matos, District Line Superintendent in charge of the Monacillos

service dispatch, will be the immediate supervisor of Mr. Edgardo Nazario Montijo, Line Supervisor III."

10. Mr. Alicea Matos applied for the position of District Line Superintendent which was published from July 2, 2004 through July 16, 2004. Plaintiff did not apply for this position.

11. On August 15, 2002 Mr. Alicea Matos was formally appointed to the Superintendent position.

12. Plaintiff's current salary is $51,051.00 per year.

13. Plaintiff has never been adjudicated the position of District Line Superintendent.

14. Plaintiff's salary has never been reduced.

15. Plaintiff was never paid the salary of the Superintendent position.

16. To qualify for the position of District Line Superintendent a candidate must posses, *inter alios*, a bachelor degree in Electric Engineering or in the alternative, two years of college education at an accredited university. Additionally, the position requires seven years of experience in activities of conservation and operation of the distribution system four of which must have been as a Line Supervisor III.

17. Plaintiff did not qualify for the position of District Line Superintendent as he is a high school graduate with no

other formal education and was promoted to Line Supervisor III as recently as October 26, 2002.

18.  Temporary substitutions are authorized by AEE's administrative manual. Specifically, these are allowed "when a regular employee is in [sic] vacation leave, sick leave, will be absent for a long period or for the service need." Manual Chapter 100 sec. 145.

### § 1983 ELEMENTS

The complaint charges violation of 42 U.S.C. § 1983 which reads:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that defendant (1) acted "under color of state law" and (2) deprived plaintiff of a federally protected right. Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999); Rogan v. City of Boston, 267 F.3d 24 (1st Cir. 2001); Dimarco-Zapa v. Cabanillas, 238 F.3d 25, 33 (1st Cir. 2001); Collins v. Nuzzo, 244 F.3d 246 (1st Cir. 2001);

All parties concede that the defendants were acting within the scope of their duties as state officers at all relevant times. Therefore, the first element is satisfied. We must then ascertain whether plaintiff was deprived of any federally protected right as a result of the events described in the complaint.

### DUE PROCESS

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. Amend. XIV, § 1. In order to properly assert a procedural due process claim under § 1983, plaintiff must show that: [1] he had a property interest and [2] that defendants, acting under color of state law, deprived him of that property interest without providing him a constitutionally adequate procedure. Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); Rumford Pharmacy v. City of E. Providence, 970 F.2d 996, 999 (1st Cir. 1992); PFZ Properties v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property

interest... cannot be deprived of that interest without due process of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000). Hence, it is only in situations where plaintiff has been able to establish a property right at stake that due process protection comes into play.

Property interests, however, are not created by the Constitution but derive instead from state law provisions. "[T]he Constitution does not create property interests; instead, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Santana v. Calderon, 342 F.3d 18, 23 (1st Cir. 2003) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

A party's unilateral belief does not by itself translate into a property right subject to due process concerns. "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim or entitlement to it.'" Macone v. Town of Wakefield, 277 F.3d at 9 (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548). See also, Gomez v. Rivera Rodriguez, 344 F.3d 103, 111 (1st Cir. 2003) "In order to establish a constitutionally-protected property interest, a plaintiff must demonstrate that he has a legally recognized expectation" to the

property interest at issue.  Santana v. Calderon, 342 F.3d at 24. "Under ordinary circumstances, an at-will employee lacks a reasonable expectation of continued employment and thus, has no property interest in [his] job." Gomez v. Rivera Rodriguez, 344 F.3d at 111 (parenthesis omitted).

In this particular case, in order to trigger due process concerns plaintiff must first present sufficient evidence to establish that he had an entitlement or property right to the Superintendent position and not merely a unilateral expectation thereof.  This legitimate expectancy must be based on rights established by the AEE's pertinent regulations.

Plaintiff claims that from December 26, 1999 to December 27, 2002, he was "appointed Superintendent and it was not on a temporary status because he stayed in the post for 3 continuous years from December 28, 1999 to December 27, 2002."[2]  According to plaintiff, he was "demoted or terminated from his functions as Superintendent."[3]

Initially, it is important to note that reference to plaintiff as "Line Superintendent II" in the December 28, 1999 letter designating him to be in charge of the Operations Center in Bayamon's Technical Office does not in any way constitute a promotion to the position of Superintendent.

---

[2]   Opposition to Motion for Summary Judgment (docket No. 76) ¶3.

[3]   Id.

First, as plaintiff himself concedes, there is no such thing as a "Superintendent II" position; only the "Superintendent" position exists.

Further, it is uncontested that the Superintendent position was not published on or about that time nor did plaintiff compete for the same. Additionally, there is no controversy over the fact that plaintiff did not meet the minimum educational and experience requirements for the Superintendent position.

Lastly, it runs contrary to reason that while plaintiff was purportedly a "Superintendent II" since December 1999 as he claims, subsequently, on October 26, 2002, he was officially adjudicated the position of Line Supervisor III, Position No. 575-05M6-221.

Based on the foregoing, we find that plaintiff's designation to be in charge of the Operations Center in Bayamon's Technical Office on December 28, 1999 did not in any way constitute an appointment to a permanent position as Superintendent. Hence, plaintiff had no property right or entitlement to remain in the same and therefore, he cannot claim a due process violation.

### POLITICAL DISCRIMINATION

Dismissal of the due process claim, however, does not dispose of the political discrimination allegations subject to First Amendment protection. *See,* <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d 103, 111 n.5 (1st Cir. 2003) (discussing difference between the two causes of action).

"Public employees can never be fired in violation of their First Amendment rights." *Id.*

According to plaintiff, after he was "demoted" from the Superintendent position he was not assigned duties and was persecuted due to his political beliefs.

Political discrimination in employment is conduct proscribed by the First Amendment. "It is now well established that political patronage restrains freedom of belief and association, core activities protected by the First Amendment." Padilla-Garcia v. Guillermo Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

In order to establish political discrimination ordinarily plaintiffs must present evidence that "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's opposing political affiliation; (3) there is a challenged employment action; and (4) 'sufficient evidence, whether direct or circumstantial... that political affiliation was a substantial or motivating factor... that the challenged employment action stemmed from politically based animus.'" Pequero-Moronta v. Santiago, No. 04-2589, 2006 WL 2686521, at *17 (1st Cir. May 4, 2006) (*citing* Gonzalez-de-Blasini v. Family Dep't, 377 F.3d 81, 85-86 (1st Cir. 2004)).

In ascertaining whether or not plaintiff was the victim of objectionable political patronage on a motion for summary judgment scenario we must follow the Mt. Healthy City Sch. Dist. Bd. of Educ.

v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) route which places the initial burden upon plaintiff who must present sufficient evidence to establish that "party affiliation was a substantial or motivating factor behind the adverse employment action." Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 131 (1st Cir. 2005). *See also*, Cepero-Rivera v. Fagundo, 414 F.3d 124, 132 (1st Cir. 2005) (political discrimination suits subject to the burden-shifting analysis developed after *Mt. Healthy*); Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 51-52 (1st Cir. 2005) (plaintiff must produce sufficient evidence for a reasonable fact finder to infer that plaintiff's political affiliation was a substantial or motivating factor behind the employment practice in controversy); Gomez v. Rivera Rodriguez, 344 F.3d at 110 ("political affiliation was a substantial or motivating factor in the decisional calculus."); Padilla-Garcia, 212 F.3d at 74("conduct was a substantial or motivating factor for the adverse employment decision."); Figueroa-Serrano, 221 F.3d at 7 (constitutionally protected conduct substantial factor in the decision).

    "If the plaintiff satisfies this burden the devoir of persuasion shifts to the defendants to prove that they would have taken the same action regardless of plaintiff's political affiliation." Gomez v. Rivera Rodriguez, 344 F.3d at 110, "commonly referred to as the Mt. Healthy defense." Padilla-Garcia, 212 F.3d at 74.

CIVIL NO. 03-2276 (RLA)                                        Page 14

Additionally, in Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1218 (1st Cir. 1989) the Court of Appeals ruled that the First Amendment's protection extends to situations in which employment changes brought about by the employer - albeit not as extreme as dismissal - result in working conditions "'unreasonably inferior' to the norm for the position" at issue.[4]

Lastly, in order to prevail in his First Amendment claim, plaintiff's evidence must show that defendants' actions "were motivated by political animus." Gonzalez-Piña v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005).

Merely juxtaposing plaintiff's political affiliation with a claim that he was treated unfairly will not suffice to meet the causation requirement in a political discrimination suit. Padilla-Garcia, 212 F.3d at 74; Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 58 (1st Cir. 1990). Similarly, the mere fact that the

---

[4] The current status of the "unreasonably inferior" doctrine applied in cases of "discrimination short of actual demotion" after Rutan has not been addressed by the First Circuit Court of Appeals. See, Gonzalez-Piña, 407 F.3d at 432 n.2; Acosta-Orozco, 132 F.3d at 101 n.5. However, it has been routinely applied at the district court level. See, Reyes-Canada, 286 F.Supp.2d at 180 ("whether [plaintiff's allegations amount to an altered work environment that is 'unreasonably inferior to the norm' is a question of fact for the jury."); Acevedo-Garcia v. Vera-Monroig, 170 F.Supp.2d 169, 172 (D.P.R. 2001) (internal citation omitted) ("record must contain evidence which would allow the fact finder to conclude... that the employee's new position is 'unreasonably inferior to the norm'". See also, Cuebas v. Vera-Monroig, 91 F.Supp.2d 464 (D.P.R. 2000); Morales-Narvaez v. Rossello, 852 F.Supp. 104 (D.P.R. 1994); Cabrero v. Ruiz, 826 F.Supp. 591 (D.P.R. 1993); Agosto-de-Feliciano, 800 F.Supp. at 1033.

**CIVIL NO. 03-2276 (RLA)**                                   **Page 15**

defendants charged with the discriminatory conduct belong to a different political party is insufficient for plaintiff to meet his burden and avoid summary disposition of a patronage claim. Figueroa-Serrano, 221 F.3d at 7-8; Kauffman v. P.R. Tel. Co., 841 F.2d 1169, 1172 (1ˢᵗ Cir. 1988).

An "assertion about statements of political affiliation – unaccompanied by any specific factual information to support [a political discrimination] claim, and unrelated to any... action taken by [defendant] against [plaintiff] - is patently insufficient to establish an act of political discrimination." Lopez-Carrasquillo, 230 F.3d at 414.

Plaintiff is not required to prove his discrimination claim by direct evidence. "In a political discrimination case, the plaintiff may discredit the proffered nondiscriminatory reason, either circumstantially or directly, by adducing evidence that discrimination was more likely than not a motivating factor." Padilla-Garcia, 212 F.3d at 77. Circumstantial evidence of politically-based discriminatory animus may suffice if, when considered in *toto*, would allow a rational jury to make a reasonable inference of improper motive. Acosta-Orozco v. Rodriguez-de-Rivera, 132 F.3d 97, 101-02 (1ˢᵗ Cir. 1997); Anthony v. Sundlun, 952 F.2d 603, 605-06 (1ˢᵗ Cir. 1991).

We find that plaintiff has failed to present sufficient evidence to establish that cessation of his temporary assignment as

Superintendent was due to his political affiliation. Further, even assuming that plaintiff has presented a viable "unreasonable inferior" claim based on the alleged treatment received we find the evidence regarding motive on this matter is also lacking.

There is no basis for the court to conclude that the defendants had knowledge of plaintiff's opposing political views, an essential element to succeed on his First Amendment claim. The only grounds submitted in support of a political animus finding for the alleged discriminatory practices alleged by plaintiff appear in his deposition testimony wherein he indicated that he was an NPP member since 1996 but that up to that year he had been affiliated with the Popular Democratic Party ("PDP").[5]

However, there is no indication in the record that any of the defendants to this action were aware of plaintiff's political affiliation at the time of the alleged events. As a matter of fact, codefendant Heriberto Alicea Matos perceived plaintiff as a PDP member. According to Mr. Alicea Matos, in the 2000 elections he "saw the plaintiff participating in activities of the Popular Democratic party (sic)."[6]

Faced with this scenario, we cannot rule that political discrimination was a substantial or motivating factor for either the alleged demotion and/or the purported adverse treatment.

---

[5]   Depo. Tr. 23.

[6]   Unsworn Statement ¶ 12.

CIVIL NO. 03-2276 (RLA)                                          **Page 17**

---

### CONCLUSION

Based on the foregoing, defendants' Motion for Summary Judgment (docket No. **67**) is **GRANTED** and the Second Amended Complaint filed in this case is hereby **DISMISSED**.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 11th day of October, 2006.


                                        S/Raymond L. Acosta
                                      RAYMOND L. ACOSTA
                                  United States District Judge